Melvin **BROWN**, Petitioner,

v.

Nicholas **GENAKOS**, acting Superintendent, Massachusetts Correctional Institution, Concord, and Frank A. Hall, Commissioner of Correction, Commonwealth of Massachusetts, Respondents.

Civ. A. No. 75–2909–T.

United States District Court,
D. Massachusetts.

Dec. 18, 1975.

David M. Skeels, Mass. Defenders Committee, Boston, Mass., for petitioner.

Deborah S. Solomon, Asst. Atty. Gen., Boston, Mass., for respondents.

## OPINION

TAURO, District Judge.

Melvin Brown is currently serving a six-year and one day sentence at M.C.I. Concord following his conviction in Suffolk Superior Court on a charge of unarmed robbery. The Appeals Court affirmed his conviction, 1974 Mass.App. Ct.Adv.Sh. 2001 (1974), 318 N.E.2d 486 and the Supreme Judicial Court denied his application for Further Appellate Review. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that under the circumstances of this case, his conviction for unarmed robbery deprived him of due process of law.

The facts of the case are undisputed.

At approximately 7:40 p. m. on the evening of August 18, 1972, Mrs. Edith Munroe was walking down Martin Luther Boulevard toward Warren Street in Roxbury. She was holding a small change purse, about the size of a man's wallet, in her left hand. Suddenly the petitioner and another youth approached Mrs. Munroe from behind and one of the youths snatched the purse from her, touching neither Mrs. Munroe's hand nor her body. The two youths fled. Mrs. Munroe testified that she was not really aware of her assailants' presence until her purse had been snatched.

The petitioner presented but one question to the Appeals Court: whether under Massachusetts law evidence of the bare act of snatching a purse from the hand of a victim, in the absence of evidence of *prior* awareness on the part of the victim of the impending act, is sufficient to constitute the element of force required for unarmed robbery under Massachusetts law. Mass.Gen.Laws ch. 265, § 19. *See* Mass.Gen.Laws ch. 277, § 39. In affirming the petitioner's conviction, the Appeals Court answered the question in the affirmative.

The petitioner now claims that the court's construction of the Massachusetts unarmed robbery statute was an unexpected departure from prior Massachusetts cases which had supposedly limited the crime of robbery to situations in which the victim was placed in fear of imminent attack. Accordingly, the petitioner claims that his conviction in a case where there was no such evidence was a violation of due process. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

### I.

Although neither party has raised the issue, it appears that the petitioner has failed to exhaust his state remedies. The record produced by the parties is bereft of any indication that the petitioner raised before the state courts any constitutional challenge to his conviction, let alone the due process claim that he now asserts. The petitioner's bill of exceptions as well as the decision of the Appeals Court indicated that the only issues he raised at trial and on appeal involved matters of state statutory construction, without any hint that he also attached constitutional implications to the Appeals Court's decision.

The exhaustion doctrine, and the policy of comity which it is designed to implement, normally requires that a state prisoner exhaust his available state judicial remedies before a federal court will hear his petition for habeas corpus. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In practical terms, the requirement means that the state judiciary must usually be afforded a fair opportunity to consider a petition-

er's constitutional theory before he brings a collateral attack upon his conviction in federal court. *Needel v. Scafati,* 412 F.2d 761 (1st Cir. 1969). In this case, where the petitioner has failed to afford the Massachusetts courts the opportunity to hear his claim, and where adequate state procedures remain open for him to do so, *see Picard v. Connor,* 404 U.S. at 272 n. 3, 92 S.Ct. 509, that requirement has simply not been met.

## II.

Alternatively, even if it could be found that the petitioner has exhausted his state remedies, him claim must fail on the merits.

■ The petitioner's theory rests in large part on *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In *Bouie,* the Court reversed two South Carolina convictions for criminal trespass stemming out of a civil rights demonstration because the defendants' conduct had not been prohibited by the state's criminal trespass statute at the time of the alleged offenses. Interpretations of that statute by the South Carolina Supreme Court between the time of defendants' arrest and trial served to extend the statute's coverage to include defendants' conduct. These intervening interpretations were applied to the defendants' cases.

In finding such retroactive application to be error, the Court held that an individual has the right to know, at the time he commits a particular act, that the conduct in which he is engaged is prohibited. Accordingly, for a state court to subsequently expand the scope of a criminal statute and then apply that interpretation retroactively to the defendant's conduct would operate like a Congressional ex post facto law, and thereby be a violation of due process. "When . . . [an] unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of

fair warning that his contemplated conduct constitutes a crime." *Id.* at 354–55, 84 S.Ct. at 1703.

The statute under which the petitioner was convicted, Mass.Gen.Laws ch. 265, § 19 provides:

> Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals and takes from the person of another money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years.

Mass.Gen.Laws ch, 277, § 39 defines robbery as:

> The taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal.

These provisions essentially restate the definition of common law robbery which in Massachusetts " 'is but an aggravated form of larceny.' " *Commonwealth v. Jones,* 362 Mass. 83, 86, 283 N.E.2d 840, 843 (1972), *quoting People v. Gallegos,* 130 Colo. 232, 235, 274 P.2d 608, 609 (1954).

On June 5, 1972, only weeks before the incident which gave rise to the petitioner's arrest, the Supreme Judicial Court had occasion to interpret the Massachusetts unarmed robbery statute. *Commonwealth v. Jones,* 362 Mass. 83, 283 N.E.2d 840 (1972). In *Jones,* the defendant had been convicted of snatching the purses of two women as they prepared to return home from a shopping trip. In neither case was the victim touched, threatened or placed in fear. Neverthless, the court affirmed the defendant's convictions, holding that purse snatching, without more, could constitute robbery if the actual force involved in the taking was "sufficient to produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition" and unable to resist. 362 Mass. at 89, 283 N.E.2d at 845.

In reaching this result the court noted that the Massachusetts unarmed robbery statute had been drafted in the disjunctive, and that in order to prove robbery the Commonwealth was required to prove that the theft resulted from *either* assaulting or placing the victim in fear (constructive force) or the exertion of actual force upon her.

The *Jones* case, coming as it did only weeks before the incident in question, therefore gave the petitioner ample notice of the scope of the unarmed robbery statute as required by *Bouie*. As noted by the Appeals Court, at the time of the attack on Mrs. Munroe, Massachusetts law provided that purse snatching would constitute robbery even if the victim was not assaulted or had not turned over her property for fear of impending attack, so long as the defendant used sufficient force to make a victim "aware" of what was happening, albeit momentarily dazed. In view of the fact that petitioner's Bill of Exceptions alleged facts which could satisfy that test, the Appeals Court decision affirming petitioner's conviction did not deprive him of due process.

The petitioner argues that the governing authority in this case is not *Jones* but *Commonwealth v. Ordway*, 66 Mass. (12 Cush.) 270 (1853), in which the Supreme Judicial Court dismissed an assault indictment because there had been no showing that the victim had a reasonable apprehension of bodily harm. Because assault is a lesser included offense to the crime of robbery, and because *Ordway* was not overruled by *Jones*, the petitioner argues that at the time of the incident, Massachusetts law required that any conviction for unarmed robbery be supported by evidence of the essential elements of assault.

■ The fallacy of this argument becomes obvious when one recognizes that *Ordway* involved an assault charge while *Jones* and the case at bar involved charges of robbery. There was, therefore, no occasion in *Jones* to reach the question as to whether or not *Ordway*

should have been overruled. As a result of *Jones*, which preceded the commission of this offense by several weeks, assault is no longer a lesser included offense of unarmed robbery by use of actual force, as was charged in this case. Were a defendant accused of unarmed robbery by assaulting and placing the victim in fear, *i. e.,* constructive force, then, of course, the elements of assault would make up some of the elements of unarmed robbery, and assault would remain a lesser included offense. But, as in this case, where the defendant is accused of unarmed robbery by use of actual, as opposed to constructive force, then Massachusetts law provides that apprehension is not a necessary element of the crime and the defendant may be convicted of unarmed robbery even though the victim had no fear of being harmed. As the court noted in *Jones*, because the requirement is stated in the disjunctive, "if there is actual force, there need be no fear (constructive force), and vice versa." *Commonwealth v. Jones*, 362 Mass. at 87, 283 N.E.2d at 843 (citations omitted).

In this case, actual force was charged and shown. The victim need not have been assaulted for there to have been a conviction of unarmed robbery. *Ordway* therefore is inapplicable.

*Commonwealth v. Novicki*, 324 Mass. 461, 87 N.E.2d 1 (1949) is also inapposite. There the victim of the alleged robbery had her back turned when money was taken from nearby and she did not realize what had happened until the defendants were at the door. Accordingly, the Supreme Judicial Court held that the defendants could not have taken the money from the victim's possession by force or fear. In the instant case, of course, there was at most evidence of a momentary lapse of attention on the part of the victim, hardly enough to preclude the inference that the victim did not become aware of the incident as it occurred.

■ Finally, the defendant argues that the language of *Jones* relied upon

by the Appeals Court was, at most, dicta, because there was evidence that both victims had been placed in fear. Accordingly, the Appeals Court decision in the instant case was the first holding "expanding" the statute and it would therefore be a violation of due process to apply *Jones* in these circumstances. This theory is also without merit.

The Court held in *Bouie* that a defendant is entitled to be placed on notice of the law at the time he commits an act which it later labeled criminal. Nothing in *Bouie* provided that the notice must come in the holding of a case which was on all fours with the defendant's. Nor did the Court preclude the use, for purposes of notice, of clear language from the state's highest court indicating what the law would be if a particular case arose in the future. Indeed, what the Court in *Bouie* found objectionable, was the *unexpected* judicial expansion of a heretofore limited statute *after* the event in question. Nowhere did the Court prohibit a state from giving its citizens clear *prior* warning of the consequences of particular conduct if it should arise in the future. If anything, it was just that type of indication which the Court required in *Bouie,* and which Massachusetts amply provided only weeks before petitioner's arrest. Accordingly, even if the key language of *Jones* was only dicta, it did place the petitioner on notice that his contemplated conduct would constitute a crime.

For the reasons stated in this opinion, petitioner's request for a writ of habeas corpus must be denied.