Filed 7/8/24  P. v. Lopez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DONTREL LOPEZ,<br><br>    Defendant and Appellant. | D082105<br><br><br><br>(Super. Ct. No. SCN354161 ) |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed; remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne M. McGinnis, and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

After his 2017 guilty plea to attempted murder and assault with a deadly weapon, Dontrel Lopez petitioned the superior court under Penal

Code[1] section 1172.6 (formerly section 1170.95) to resentence him. After hearing oral argument, the court denied the petition without issuing an order to show cause. Lopez appeals, contending that the superior court erred when it denied his petition at the prima facie stage of the proceedings. We disagree that Lopez was entitled to an evidentiary hearing on his section 1172.6 petition because he was the actual shooter. However, as Lopez argues and the People agree, the abstract of judgment does not accurately set out the superior court's oral pronouncement of the restitution fine and parole revocation fine. As such, we remand this matter with directions to the superior court to correct the abstract of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The San Diego County District Attorney's office filed a second amended information charging Lopez with attempted premeditated murder (§§ 664/189/187, subd. (a); count 1), carjacking (§ 215, subd. (a); count 2), robbery (§ 211; count 3), and assault with a deadly weapon (§ 245, subd. (a)(1); count 4). As to counts 1 through 3, the information further alleged Lopez personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury on the victim causing permanent paralysis (§ 12022.7, subd. (b)).

On October 3, 2017, Lopez pleaded guilty to attempted murder (count 1) and assault with a deadly weapon (count 4). Regarding count 1, he admitted the enhancements alleging the personal use of a firearm under section 12022.5, subdivision (a) and the personal infliction of great bodily injury causing permanent paralysis under section 12022.7, subdivision (b).

---

[1] Statutory references are to the Penal Code unless otherwise specified.

2

To this end, in his plea of guilty/no contest form, Lopez wrote the following statement under penalty of perjury:

> "I unlawfully attempted to murder a human being and in doing so, personally . . . inflicted great bodily injury which caused permanent paralysis and used a handgun [in] the commission of the offense . . . ."

At the sentencing hearing, the superior court and Lopez engaged in the following exchange related to the attempted murder offense:

> "Q  As to Count One, that on or about October 30, 2015, you did unlawfully attempt to murder Colin A[.], a human being, in violation of Penal Code Section 187(a) and Penal Code Section 664, how do you plead to that charge?
>
> "A  Guilty, your Honor.
>
> "Q  And do you admit that, in the commission and attempted commission of the offense, you personally used a firearm, to wit, a handgun, within the meaning of Penal Code Section 12022.5, paren A?  Do you admit that allegation?
>
> "A  Yes, your Honor.
>
> "Q  And do you admit that in the commission and attempted commission of the above offense, you personally inflicted great bodily injury upon Colin A[.], not an accomplice to the above offense, causing Colin A[,] to suffer paralysis of a permanent nature, within the meaning of Penal Code Section 12022.7, paren B?  Do you admit that allegation?
>
> "A  Yes, your Honor."

The court dismissed the remaining charges and allegations and sentenced Lopez to the stipulated term of 25 years in prison.

On January 28, 2022, Lopez filed a petition for resentencing under section 1172.6.  After the parties briefed the matter, the superior court heard oral argument at a prima facie hearing.  The court denied the petition finding

that Lopez was ineligible for relief as a matter of law because he was the "direct perpetrator." In reaching that conclusion the court read the "plain language of the change of plea form . . . , which describes the factual basis of the plea:"

> "Unlawfully attempted to murder a human being and in doing so, personally inflicted great bodily injury which caused permanent paralysis, and used a handgun during the commission of the offense."

Lopez filed a timely notice of appeal.

DISCUSSION

A. Section 1172.6 Petition

We review a denial of resentencing under section 1172.6 for failure to present a prima facie case using a de novo standard of review. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

In 2019, the California Legislature amended sections 188 and 189, which made changes to existing law such that murder liability could no longer be imposed on a defendant who was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Section 1172.6, subdivision (a) provides a procedure by which a convicted person may seek resentencing under the new law. After the offender files the appropriate petition, the court must appoint counsel to represent the offender, and the matter is set for hearing to determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 961–963, 967.) In making that preliminary determination, the court may rely on the record of

4

conviction but may not engage in factfinding, weighing of evidence, or the exercise of discretion. (*Id*. at p. 972.)

A petitioner is ineligible for relief as a matter of law if the record of conviction establishes that he or she was not convicted under any theory of liability affected by the Legislature's amendments to the law of murder. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 866–867.) A record of conviction may include the charging document and the plea form. (See, e.g., *People v. Saavedra* (2023) 96 Cal.App.5th 444 (*Saavedra*).)

The only theory of attempted murder identified for resentencing eligibility in section 1172.6 is "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) [the statute "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].) The natural and probable consequences doctrine is a means by which malice can be implied by the factfinder if the person " 'willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses.' " (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953, citing *People v. Gonzalez* (2012) 54 Cal.4th 643, 653.)

"In the plea context, a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; or (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by [section 1172.6]." (*People v. Flores* (2022) 76 Cal.App.5th 974,

987 (*Flores*).) As we discuss *post*, the record of conviction conclusively establishes that Lopez was not convicted under any theory of imputed malice, and therefore the trial court did not err in denying his petition at the prima facie stage.

Lopez makes three primary arguments here. First, he asserts his admission to the factual basis for his plea did not establish "undisputed facts that could be relied on to deny his petition at the prima facie stage." Second, he claims the elements of the offenses and attendant enhancements he admitted are insufficient to establish his ineligibility for relief. Specifically, he argues his pleas neither prove he acted with malice nor that he was the direct perpetrator. Third, he asserts that "public policy weighs against" denying a resentencing petition in guilty plea cases at the prima facie stage. We find these arguments unpersuasive.

In his plea form, Lopez admitted under penalty of perjury that he: (1) unlawfully attempted to murder a human being; (2) in the process of attempting to murder someone, he personally inflicted great bodily injury, which caused permanent paralysis; and (3) used a handgun in the commission of the offense.

In addition, at the hearing on his change of plea, Lopez was placed under oath and confirmed to the court that those statements were true and correct.

Neither the amended complaint nor the plea form included any reference to the natural and probable consequences doctrine or to any other theory of imputed or vicarious liability. In fact, the amended complaint specified that the attempted murder was willful, deliberate and premeditated, and the admissions in support of the plea similarly were focused on Lopez's personal conduct. This fact alone seems to place Lopez

6

beyond the reach of section 1172.6, subdivision (a) because that section "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*Coley*, *supra*, 77 Cal.App.5th at p. 548.)

Moreover, Lopez's sworn statements also establish his intention to kill, placing him outside the reach of section 1176.2. Not only did he admit that he "attempted to murder a human being," but Lopez also explained how he did it (using a gun) and the devastating effects of his attempt (personally inflicting great bodily injury, i.e., causing permanent paralysis). Generally, the admission to attempted murder carries with it an intent to kill. (See *People v. Smith* (2005) 37 Cal.4th 733, 739 [" '[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing' "], quoting *People v. Lee* (2003) 31 Cal.4th 613, 623.) Although the natural and probable consequences doctrine, at one time, provided an exception to that rule (see *id*. at pp. 624-625), as we discussed *ante*, there is not even a hint of that doctrine here. Lopez's plea goes far beyond a generic statement that he attempted to kill another human. Rather, Lopez explicitly acknowledged that he paralyzed someone in that attempt when he used a gun. Therefore, when Lopez pleaded guilty to attempted murder under those specific facts, he necessarily admitted his intent to kill.

A recent decision of Division Three of our court supports our conclusion that Lopez's plea makes him ineligible for resentencing under section 1172.6 as a matter of law. In *Saavedra*, *supra*, 96 Cal.App.5th at pages 446–447, the appellate court affirmed the trial court's conclusion that a defendant charged with attempted premeditated murder was ineligible for resentencing relief as a matter of law, based upon his plea statement that he " 'willfully, unlawfully and with malice aforethought attempted to murder [three] human beings, by

personally discharging a firearm at the vehicle [they] were occupying, within the meaning of . . . section 12022.53.' " The court concluded that the plea statement established that Saavedra was the actual shooter. "The factual basis for the plea cannot reasonably be construed as potentially imposing liability under the natural and probable consequences doctrine because it is a theory of vicarious liability, and Saavedra did not act vicariously." (*Saavedra*, at p. 448.)

As in *Saavedra*, Lopez's plea to attempted murder, read in tandem with his admissions of use of a firearm and personally causing great bodily injury, negates any possibility of vicarious liability. It is true that in *Saavedra*, the reviewing court placed emphasis on the plea form's use of the word "by," i.e., that Saavedra specifically admitted that he attempted the murder " 'by personally discharging' " the firearm. (*Saavedra*, *supra*, 96 Cal.App.5th at p. 447.) Lopez's plea form did not use the preposition "by" to link his admissions, but after he admitted that he attempted to murder someone, he added the following: "in doing so[, I] personally . . . inflicted great bodily injury which caused permanent paralysis and used a handgun [in] the commission of the offense . . . ." We read "in doing so" here to serve the same grammatical function as "by" in *Saavedra*. Simply put, we do not see how Lopez's plea form, considered in its entirety, can be read as anything but a sworn admission that Lopez attempted to murder the victim, and in doing so, personally inflicted great bodily injury through his personal use of the firearm. Such an admission is necessarily inconsistent with the imposition of liability for attempted murder based on the natural and probable consequences doctrine.

Despite *Saavedra*'s applicability to the instant matter and the People's reliance on it in their respondent's brief, Lopez does not address that case

8

whatsoever. Rather, Lopez argues the instant matter is analogous to *Flores*, *supra*, 76 Cal.App.5th 974. There, the defendant pleaded no contest to a charge of second-degree murder. The charging document did not specify or exclude any specific theory of murder; and "[i]n entering his plea, [the defendant] did not admit to or stipulate to any particular theory of murder." (*Id.* at p. 987.) However, in *Flores*, the factual basis for the murder plea was a preliminary hearing transcript, and the defendant never admitted the truth of the testimony in that transcript. (*Id.* at p. 991.) In contrast, Lopez admitted under oath in his plea that he attempted to murder the victim (a charge that included the element of his intent to kill). He did not assert, suggest, or imply that the murder attempt was merely part of a natural and probable consequence of the conduct of someone else.

Similarly, our analysis does not change if we consider *People v. Rivera* (2021) 62 Cal.App.5th 217 as Lopez urges us to do. In that case, the court found that the defendant did not admit the truth of the evidence presented to the grand jury despite stipulating to the grand jury transcript as the factual basis for his plea. (*Id.* at p. 235.) Thus, the grand jury evidence was not sufficient to establish the defendant acted with actual malice. (*Ibid*.) Leaving open the possibility a grand jury or preliminary hearing transcript could be enough to foreclose relief where a petitioner does not contest the evidence, the appellate court found the grand jury transcript insufficient to defeat a facially sufficient petition at the prima facie stage. (*Id.* at pp. 235–239.) Unlike *Rivera*, Lopez here swore in his plea form and testified under oath that the factual basis for his plea was true and that he was pleading guilty because he actually caused the paralyzing injury in an attempt to murder the victim. In this sense, Lopez agreed to facts (shooting the victim and causing paralysis) beyond the mere elements of murder.

9

As such, the record of conviction establishes he is ineligible for relief, and *Rivera* is not helpful to Lopez's cause.

Additionally, we are not persuaded by Lopez's argument that *People v. Dillingham* (1986) 186 Cal.App.3d 688 mandates a different result here. In *Dillingham*, the trial court—in determining whether the defendant's two prior first degree burglary convictions qualified for the imposition of serious felony enhancements—took judicial notice of documents in the court files. Relying upon the information for each charged burglary, both alleging burglary of a residence, the change of plea transcript for the charge to which the defendant pleaded guilty, and the jury verdict form finding him guilty of burglary in the first degree, the trial court found both convictions to be residential burglaries and imposed two five-year serious felony enhancements. (*Dillingham*, at p. 696–697.) On appeal, the Court of Appeal assessed whether either offense qualified for the "serious felony" enhancement as a "burglary of a residence." (*Id.* at p. 697.) The appellate court determined the enhancement was properly applied to one of the convictions, by virtue of the date of the offense, because, based on the elements, it qualified as a residential burglary as a matter of law. (*Id.* at p. 699.) For the second conviction, however, the court determined the enhancement could not be sustained because entry into a residence did not become an element of first-degree burglary until after the date of the defendant's conviction. (*Id.* at p. 699–700.) The court found the trial court's reliance on language in the information was improper because it was " 'superfluous,' " did not "add to the elements of the crime, posed no issue which was necessarily adjudicated by the judgment, and thus was not the subject of collateral estoppel." (*Id.* at p. 700, citing *People v. Alfaro* (1986) 42 Cal.3d 627, 636 (*Alfaro*).) In its analysis, the appellate court observed that

10

proof of the serious felony enhancement was not limited to the elements of the crime but instead can include " 'proof of any matter which was necessarily adjudicated by the judgment and which defendant had an incentive to contest.' [Citation.]" (*Dillingham*, at p. 700.) On the facts before it, however, the court found " 'the prosecution had no need to prove, defendant had no incentive to contest, and the trier of fact no duty to decide' the allegation of residency" and thus there was insufficient proof the conviction was for the qualifying " ' "burglary of a residence." ' [Citation.]" (*Ibid.*)

As Lopez acknowledges, however, the primary decision upon which the court relied in *Dillingham*, *Alfaro*, *supra*, 42 Cal.3d 627, was overruled in *People v. Guerrero* (1988) 44 Cal.3d 343, which held that a trial court can rely on the "entire record of the conviction" in determining a prior conviction allegation. (*Guerrero*, at p. 355.) In response to this substantial obstacle, Lopez contends his "concern does not turn on what facts are established by the record of conviction, but rather whether the plea form's use of boiler plate language 'I admit' should be treated as a binding admission of 'facts' when a plea only requires a stipulation to a factual basis." Whether Lopez's admissions were legally required for the trial court to accept his plea (§ 1192.5, subd. (c)) does not change the content of what he admitted. And Lopez made admissions in open court that went beyond his statement in his change of plea form. As *Saavedra* makes clear, the specific language of the factual basis for Lopez's plea—as admitted by Lopez under penalty of perjury and under oath in open court—is legally consequential as a binding admission. Thus, Lopez's argument is meritless, and his reliance on *Dillingham* is misplaced.

Finally, Lopez asserts that public policy weighs against the denial of petitions at the prima facie stage for cases involving guilty pleas. In support

11

of this assertion, Lopez claims the enactment of Senate Bill No. 775 (Stats. 2021, ch. 551)to broaden eligibility for relief to those who pleaded guilty to voluntary manslaughter "recognized this reality." Not so. Section 1172.6 does not apply different standards to petitions at the prima facie stage depending on whether the conviction resulted from a jury finding or from a guilty plea. Although the " 'prima facie bar was intentionally and correctly set very low' " (*Lewis*, *supra*, 11 Cal.5th at p. 972), a petition may nevertheless be denied at the prima facie stage if the defendant was convicted as the direct perpetrator. (*People v. Harden* (2022) 81 Cal.App.5th 45, 47 [actual killer ineligible for relief under section 1170.95 as a matter of law].) In section 1172.6 prima facie stage proceedings, a "conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial" if the record of conviction shows the defendant was not prosecuted under a theory made faulty by Senate Bill No. 1437 (Stats. 2018, ch. 1015). (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167.) Based on the language of the statute and the nature of the proceedings, Lopez fails to demonstrate the prima facie analysis for convictions secured through guilty pleas should be more forgiving than the same convictions rendered after a jury trial. Thus, Lopez's public policy argument fails.

Nevertheless, Lopez points to excerpts from the preliminary hearing transcript and asserts there was evidence his brother was armed and may have been the shooter. But Lopez did not stipulate to the preliminary hearing transcript as a factual basis for the plea, the prosecutor urged the trial court not to use the preliminary hearing in reaching its decision, and it appears the trial court did not in fact rely on the preliminary hearing transcript to deny the petition. Accordingly, we are not persuaded that the

evidence offered at the preliminary hearing somehow undermines the trial court's denial of Lopez's section 1172.6 petition at the prima facie stage.

For the foregoing reasons, we agree with the trial court that Lopez is ineligible for relief as a matter of law under section 1172.6.

B.  Abstract of Judgment

Lopez contends, and the People concede, that the abstract of judgment and minute order do not accurately reflect the trial court's oral imposition of a restitution fine of $5,000 and a stayed parole revocation fine of $5,000. Both the minute order and abstract of judgment recorded the imposition of a restitution fine and parole revocation fine, each in the amount of $10,000. Because this does not accurately reflect the trial court's oral pronouncement of judgment, the minute order and abstract of judgment must be corrected.

Where a discrepancy exists between the oral pronouncement of judgment and the minute order or abstract of judgment, the oral pronouncement controls.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) The abstract of judgment and minute order must accurately reflect the court's oral pronouncement of judgment because, although not the judgment of conviction, they represent " ' "the process and authority for carrying the judgment and sentence into effect." [Citations.]' [Citation.]" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  "Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*Ibid.*)

During the sentencing hearing, the trial court issued two restitution fines.  The trial court stated, "The restitution fine is $5,000.  The additional restitution fine is $5,000 and that is stayed as long as his parole, if he

13

receives parole, is not revoked." After correcting its calculation of credits, the trial court again addressed the additional restitution fine, stating, "The additional restitution fine under .45 is $5,000 that is stayed as long as any post-release supervision is not revoked."

In contrast to the oral pronouncement of judgment, the abstract of judgment and minute order both list each fine as $10,000. These are inconsistent with the trial court's oral pronouncement and should be corrected.[2] As a result, we shall remand this matter to the superior court with instructions to correct the minute order and abstract of judgment to reflect the $5,000 restitution fine and parole revocation fine issued by the trial court. (*People v. Mitchell*, *supra*, 26 Cal.4th at p. 185.)

DISPOSITION

The postjudgment order denying Lopez's petition for resentencing under section 1172.6 is affirmed. This matter is remanded to the superior court with instructions that it correct the abstract of judgment and minute order so both are consistent with this opinion and the superior court's oral pronouncement during sentencing. The superior court also shall forward the

---

[2]    When the trial court readdressed the additional restitution fine, it appears to have invoked section 1202.45, subdivision (b), that references post-release supervision rather than subdivision (a) that references parole. Based on the language of sections 3451 and 1192.7, it does not appear Lopez could be subject to section 1202.45, subdivision (b), after being convicted of attempted murder. In any event, the abstract of judgment correctly recorded the trial court's reference to the parole revocation subdivision.

amended abstract of judgment to the Department of Corrections and Rehabilitation.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.